**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ROBERT HARPER, ) | |
| ) | No.   07 C 2393 |
| Plaintiff, ) | |
| ) | Judge John W. Darrah |
| v. ) | |
| ) | Magistrate Judge Schenkier |
| SHERIFF OF COOK COUNTY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
<u>RULE 12(b)(6) MOTION TO DISMISS</u>**

Defendants, the Sheriff of Cook County and Cook County (together referred to as the "County Defendants"), by and through their attorneys, RICHARD A. DEVINE, State's Attorney of Cook County, Patrick T. Driscoll, Jr., Deputy State's Attorney, and Louis R. Hegeman, John P. Heil Jr. and Maureen O. Hannon, Assistant State's Attorneys, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, move for dismissal of this complaint with prejudice. In support thereof, the County Defendants state the following:

**I.    INTRODUCTION**

The complaint, a copy of which is attached hereto as "Exhibit A," was filed on May 1, 2007. Plaintiff purports to bring this action pursuant to 42 U.S.C. § 1983, alleging that his subjection to certain procedures as a pre-trial detainee at Cook County Jail violated his rights secured by the Fourth and Fourteenth Amendments. (Complaint, Ex. A, ¶ 9). Plaintiff has sued the Sheriff of Cook County in his official capacity and has also named the County of Cook, on the basis of *Carver v. Sheriff of LaSalle County*, 324 F.3d 947 (7th Cir. 2003). Plaintiff seeks monetary relief on behalf of himself and a proposed class of individuals. (Complaint, Ex. A, ¶ 11).

The County Defendants move to dismiss the complaint in its entirety pursuant to Rule

12(b)(6) for failure to state a cognizable claim as to a constitutional tort under 42 U.S.C. § 1983, as well as a failure to set forth sufficient factual allegations to state a cause of action. Beyond the deficiencies under § 1983, Plaintiff attempts to bring this class action, even though he is already a class member in two actions pending in this District involving the same issues of fact. As Plaintiff is already a member of two certified classes, he patently cannot seek to represent an identical class in this courtroom. Finally, as to the use of simple chest x-rays and a simple blood sample, the complaint fails to rise to the level of a § 1983 constitutional tort under the Fourth and Fourteenth Amendments.

## II.  ALLEGATIONS OF THE COMPLAINT

Plaintiff alleges that, after a warrantless arrest in Chicago, he was transported to Cook County Jail on or about September 30, 2005. (Complaint, Ex. A, ¶ 4). He subsequently appeared in Central Bond Court, at which time a bond was set by the presiding judge. (Complaint, Ex. A, ¶ 5). However, per the judge's order, Plaintiff was held in the custody of the Defendant Cook County Sheriff, and underwent intake procedures at Cook County Jail. (Complaint, Ex. A, ¶¶ 5, 7).

Plaintiff asserts that the intake procedures violated his Fourth and Fourteenth Amendment rights. The intake procedure included four allegedly non-consensual steps: (1) a chest x-ray; (2) a penile swab; (3) the taking of blood; and (4) a strip search. (Complaint, Ex. A, ¶¶ 7, 9). Plaintiff states that the foregoing procedures, which allegedly took place while his family members were attempting to post his bond, were performed in accordance with a policy and/or practice of the Defendant Sheriff that is "so permanent and well-settled that it constitutes a custom or usage with the force of law." (Complaint, Ex. A, ¶ 7). As a result, Plaintiff alleges to have experienced embarrassment, humiliation, an unreasonable deprivation of his liberty, and pain and suffering due to the alleged policy and practice of the Defendant Sheriff. (Complaint, Ex. A, ¶ 9).

Plaintiff is presented as a putative class representative of "all persons who, following his or her arrest without a warrant, appeared on or after May 1, 2005 before a judge at 'TV court' and, while persons acting on behalf of the arrestee sought to post cash bond, was required to submit to the processing . . . of a person admitted to the Cook County Jail." (Complaint, Ex. A, ¶ 10).

### III.     ARGUMENT

#### A.     Standard of Review

In determining the propriety of dismissal under Rule 12(b)(6), a court must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *Jacobs v. City of Chicago*, 215 F.3d 758, 765 (7th Cir. 2000). However, courts need not accept as true mere "legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002); *see also Northern Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995). Bare legal conclusions attached to narrated facts will not suffice to state a claim for which relief may be granted. *Strauss v. City of Chicago*, 760 F.2d 765, 768 (7th Cir. 1985). The United States Supreme Court recently addressed this concept in *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 2007 U.S. LEXIS 5901 (May 21, 2007). The Court announced that it will no longer follow the language of *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957), which has long been misconstrued as meaning "that any statement revealing the theory of the claim will suffice unless its factual impossibility may be shown from the face of the pleadings." *Twombly*, 127 S. Ct. at 1968. Rather, the Court held, a claim for relief must contain sufficient facts to make the claim "plausible on its face." *Id.* at 1974.

### B. Two Certified Class Actions Already Encompass Plaintiff's Claims As To Penile Swabbing And Strip Searching

The Plaintiff brings this cause notwithstanding the fact that there are currently two class actions pending addressing the same jail intake procedures. Both classes have been certified by the United States District Court for the Northern District of Illinois, Eastern Division and are as follows.

#### 1. The Penile Swab Test

The first pending action, *Jackson, et al. v. Sheriff of Cook County, et al.*, 06 C 493, is currently before the Honorable David H. Coar. On December 14, 2006 a class of plaintiffs was certified consisting of:

> All male prisoners at the Cook County Jail who, on and after January 27, 2004, were subjected to the non-consensual insertion of a swab into his penis as part of his admission to the jail.

A copy of Judge Coar's Memorandum Opinion and Order is attached and incorporated herein as "Exhibit B." A Class Settlement Agreement was subsequently approved by Judge Coar on July 17, 2007, a copy of which is attached hereto as "Exhibit C." Because Plaintiff asserts that he suffered a "non-consensual insertion of a swab into [his] penis" (Complaint, Ex. A, ¶ 7) "[o]n or about September 30, 2005" (Complaint, Ex. A, ¶ 4), any claim Plaintiff has arising from that procedure is plainly barred by *res judicata* because Plaintiff is already a member of the class certified in *Jackson*.

Plaintiff should be fully aware that he is already a member of the *Jackson* class, as it was Plaintiff's counsel, Kenneth N. Flaxman and Thomas G. Morrissey, who brought and litigated the *Jackson* case before Judge Coar.

#### 2. The Strip Search

The second certified class action, *Young, et al. v. County of Cook, et al.*, 06 CV 552, is currently pending before the Honorable Matthew F. Kennelly. Two individual classes were certified under Fed.R.Civ.P. 23 in *Young* on April 25, 2007, consisting of:

> (1) all males who were subjected to a strip search and/or a visual body cavity search as new detainees at the Cook County Jail on or after January 30, 2004; and (2) all persons charged only with misdemeanor or lesser offenses not involving drugs or weapons who were subjected to a strip search and/or a visual body cavity search as new detainees at the Cook County Jail on or after January 30, 2004.

A copy of Judge Kennelly's Memorandum Opinion and Order is attached and incorporated herein as "Exhibit D." As outlined above, Plaintiff alleges that he was arrested on or about September 30, 2005, and then subjected to numerous jail intake procedures, including a strip search. (Complaint, Ex. A, ¶¶ 4, 7). The strip search alleged in the Complaint obviously occurred well after the January 30, 2004 date certified by Judge Kennelly. As Plaintiff was certainly a "new detainee" processed into the jail well after January 30, 2004, he is already a member of the certified class as to all claims regarding his strip search. *Res judicata* bars Plaintiff's attempt to represent a class of individuals already included among the class certified in *Young*.

By their terms, each class includes Plaintiff. Plaintiff is, therefore, barred by *res judicata*, or claim preclusion, from bringing a separate action as a class representative on the same facts. *Abbott v. State of Michigan,* 474 F.3d 324 (6th Cir. 2007) (dismissal of a class action regarding pension benefits appropriate pursuant to Rule 12(b)(6) because barred by *res judicata*); *see also Martin v. Davies,* 917 F.2d 336 (7th Cir 1990) (the Duran decree binds pre-trial detainees who were not direct parties to the action).

The doctrine of *res judicata* "serves the interests of judicial economy and finality in disposing disputes by barring both the parties to a judgment and their privies from relitigating the identical cause of action." *Anderson v. Federal Insurance Co.,* __ F. Supp __, 2007 U.S. Dist. LEXIS 18959, *26 (N.D. Ill. March 16, 2007)(citing *Crop-Maker Soil Servs., Inc. v. Fairmount State Bank*, 881 F.2d 436, 438 (7th Cir. 1989)). *Res judicata* applies when there exists: (1) an identity of the parties or their privies; (2) an identity of the causes of actions; and (3) a final

5

judgment on the merits. *Anderson*, 2007 U.S. Dist. LEXIS at *28. Although *res judicata* is an affirmative defense which may convert a motion to dismiss into one for summary judgment, dismissal of an action pursuant to Rule 12(b)(6) on *res judicata* grounds is appropriate when it is clear from the complaint's face, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law. *Id.* at *24; s*ee also Abbott v. State of Michigan,* 474 F.3d 324 (6th Cir. 2007) (dismissal of a class action regarding pension benefits was barred by *res judicata* and dismissal was appropriate pursuant to 12(b)(6)). Because Plaintiff's complaint dictates that he is a member of the *Jackson* and *Young* classes, his attempt to relitigate those claims should be dismissed with prejudice.

The other two procedures that Plaintiff alleges violated his Fourth and Fourteenth Amendment rights – a blood test and a chest x-ray – were not specifically certified in *Jackson* and *Young*. Nevertheless, because those actions were part of the same transaction (i.e., jail intake), they should be included within the umbrella of the *Jackson* and *Young* cases and barred as well. *Res judicata* "applies not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of fact." *Adams v. Southern Farm Bureau Life Ins. Co.,* 2007 U.S. App. LEXIS 17624, *33 (11th Cir. July 25, 2007) (citation omitted).

    **C.**    **The Remainder Of The Allegations In The Complaint Do Not Rise To The Level Of A Constitutional Tort**

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a government official, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. *Brokaw v. Mercer County*, 235 F.3d 1000, 1009 (7th Cir. 2000); *see also Gomez v. Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920 (1980). The County Defendants do not

6

dispute that the complaint alleges that they were acting under color of state law, but rather assert that the x-ray and blood test do not as alleged state a cause of action for a violation of Plaintiff's Fourth and Fourteenth Amendment rights as a matter of law.

### 1. Taking A Simple Blood Sample And X-Ray Is Not A Violation Of The Fourth Amendment In This Setting

The Fourth Amendment protects individuals from unreasonable searches and seizures.[1] The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the state. *Schmerber v. California* 384 U.S. 757, 767, 86 S. Ct. 1826 (1966). "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . . Each case requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S. Ct. 1861 (1979)(strip searches conducted on pre-trial detainees after contact visits did not violate the Fourth Amendment).

Although the compliant is devoid of specific facts, it does allege that Plaintiff appeared before a judge who set bond and ordered that Plaintiff be held in the custody of the Sheriff. (Complaint, Ex. A, ¶ 5). For purposes of the Fourth Amendment, therefore, Plaintiff concedes that there was a judicial determination of probable cause. *Gerstein v. Pugh*, 420 U.S. 103, 95 S. Ct. 854 (1975). Under such circumstances the government may subject Plaintiff to the restrictions and

---

[1] In *Cruzan v. Director, Missouri Dep't of Public Health*, 497 U.S. 261, 279 n1, 110 S. Ct. 2841 (1990), the Supreme Court held that claims concerning unwanted medical treatments are properly analyzed in terms of a Fourteenth Amendment liberty, rather than privacy, interest. However, Judge Kennelly recently concluded that "it is an open question whether the Fourth Amendment's prohibition against unreasonable searches applies to medical procedures, executed by government actors, that are unrelated to evidence gathering." (Exhibit D, p. 7). Based on that language, the County Defendants address both the Fourth and Fourteenth Amendment claims in their memorandum.

conditions of a detention facility. *Bell*, 441 U.S. at 536. Therefore, what remains is an assessment as to whether the alleged blood test and chest x-ray were unreasonable in light of existing constitutional law.

          a.      *The Blood Test*

The Fourth Amendment only proscribes searches that are *unreasonable*. Under the Fourth Amendment, the permissibility of a search is judged by balancing its intrusion upon the individual's Fourth Amendment interests against the promotion of a legitimate government interest. *Skinner v. Railway Labor Executives' Assoc.*, 489 U.S. 602, 619, 109 S. Ct. 1402 (1989).

When the search serves a purpose other than evidence gathering, as is the case here, the search is analyzed under the "special needs" standard. *Thompson v. County of Cook*, 412 F. Supp. 2d 881, 891 (N.D. Ill. 2005). The special needs standard has been applied in cases where there is a significant governmental interest such as the maintenance of institutional security, public safety, and order. *Roe*, 193 F.3d at 78 (upholding statute requiring all convicted sex offenders to submit blood samples for analysis and inclusion in a state DNA database); *Dunn*, 880 F.2d at 1195-1197 (non-consensual AIDS testing not violative of prisoners' Fourth Amendment rights); *U.S. v. Williams*, 2004 U.S. Dist. LEXIS 11834 (E.D. Penn. 2004)(upholding search warrant to collect physical samples such as a buccal swab and blood and hair samples for DNA analysis). In conducting an analysis based on the special needs standard, courts must consider: (1) the nature of the privacy interest at stake; (2) the nature of the intrusion; and (3) the nature of the government's interest and the efficacy of its practice in meeting that interest. *Thompson*, 412 F. Supp. 2d at 891.

Applying this rational to the allegations in the complaint regarding the blood test, it is clear that Plaintiff has failed to state a cause of action for a violation of his Fourth Amendment rights. First, a prisoner's privacy interest is subject to the paramount concerns of institutional security.

*Dunn v. White* 880 F.2d 1188, 1197 (10th Cir. 1989)(citing *Hudson v. Palmer* 468 U.S. 517, 104 S. Ct. 3194 (1984)). "In or out of prison, plaintiff has only a limited privacy interest in not having his blood tested." *Id*. at 1194. Secondly, the nature of the intrusion is minimal. "The blood test procedure has become routine in our everyday life. It is a ritual for those going into military service as well as those applying for marriage licenses. Many colleges require such tests before permitting entrance and literally millions of us have voluntarily gone through the same, though a longer, routine in becoming blood donors." *Schmerber,* 384 U.S. at 771, n13 (quoting *Breithaupt v. Abram*, 352 U.S. 432, 436, 77 S. Ct. 408 (1957)); *see also Roe v. Marcotte*, 193 F.3d 72, 77 (2d Cir. 1999)("Blood sampling is commonplace and no threat to the safety or health of the individual."). Third and finally, the nature of the Defendant Sheriff's interest is, first and foremost, to preserve and protect the individuals within Cook County Jail from infectious disease. On issues of institutional security, courts should accord wide-ranging deference to jail officials. *Dunn*, 880 F.2d at 1191 (citing *Bell*, 468 U.S. at 547-48).

Clearly, if a blood test was administered to Plaintiff upon his delivery to Cook County Jail, the invasion was minimal and the interest of the Defendant Sheriff in protecting other inmates and jail personnel outweighs any limited constitutional infringement suffered by Plaintiff.

### b. The Chest X-Ray

As in the aforementioned blood test, a chest x-ray is a non-invasive, non-humiliating procedure that most people have undergone at some point. *See, e.g., Karolis v. New Jersey Dep't of Corrections*, 935 F. Supp 523 (D.N.J. 1996) (rejecting prisoner's objection to "Mantoux" tuberculosis test in favor of a less intrusive chest x-ray). A confined prison setting is precisely the type of environment where tuberculosis ("TB") is likely to spread easily and rapidly. *Id*. at 528. As applied to the scant allegations in the instant complaint, weighing the nearly nonexistent intrusion of

a chest x-ray against the benefit to the Cook County Jail population and the community at large, Plaintiff has failed to state a cause of action for a Fourth Amendment violation upon which relief may be granted.

### 2. Taking A Simple Blood Sample And X-Ray Is Not A Violation Of The Fourteenth Amendment In This Setting

The right for an inmate to refuse unwanted medical treatment is not absolute. A valid regulation that impinges on this right is one that is reasonably related to a legitimate penological interest. *Russell v. Richards*, 384 F.3d 444, 447 (7th Cir. 2004)(citing *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254 (1987)). In evaluating whether a regulation meets this standard, courts must consider: (1) the presence of a valid and rational connection between the regulation and governmental interest; (2) the existence of alternative means of exercising the right that remain open to inmates; (3) the impact that accommodation of the inmate would have on the guards, other inmates, and the allocation of prison resources; and (4) whether there is an alternative that accommodates the prisoner's rights at *de minimis* cost to valid penological interests. *Russell*, 384 F.3d at 447. The absence of ready alternatives is evidence of the reasonableness of the regulation. *Turner*, 482 U.S. at 80.

For purposes of this motion to dismiss, we assume that Plaintiff's chest x-ray and blood draw were non-consensual. However, the County Defendants have an overarching interest in identifying and treating diseases before they spread throughout the jail – and this interest clearly outweighs the minimal intrusion that is occasioned by a blood test or chest x-ray. *See Russell*, 384 F.3d at 450 (Indiana jail's policy of directing inmate to use delousing shampoo was rationally related to legitimate interest in preventing exposure to head lice and avoiding the costs of eradicating an infestation).

The legitimate and controlling interest of the state in investigating and responding to the

threat of infectious disease in prisons has been consistently upheld. *See Russell v. Richards*, 384 F.3d 444 (7th Cir. 2004); *Dunn v. White* 880 F.2d 1188 (10th Cir. 1989). Prison officials have an affirmative duty to protect inmates from bodily harm, including disease. *Karolis*, 935 F. Supp at 527. In fact, it has been argued that the failure to screen prisoners for communicable diseases may violate the constitutional rights of other prisoners. *Id*. Illinois law also directs the Sheriff of Cook County to furnish the necessary medical aid for all prisoners under his charge, 730 ILCS 125/17, and places the responsibility for the cost of maintaining the prisons on the County of Cook. 730 ILCS 125/1. This is the case even when the medical services that are required are a result of a preexisting medical condition. (1996 Opinion Illinois Attorney General 96-914). Clearly, the County defendants cannot be guilty of a constitutional tort for following their statutory obligations and duties.

      Identifying diseases by way of a blood test, and TB, by way of an x-ray, are only minimally invasive procedures, which are neither embarrassing nor humiliating to the detainee. *See, e.g., Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1272 (7th Cir. 1983) (jail policy of strip search and visual body cavity inspection of all female misdemeanor arrestees unreasonable under the Fourth and Fourteenth Amendments). Moreover, the fit between the legitimate interest of the jail in keeping inmates and workers disease-free and the policy of the jail in taking the blood and x-ray as alleged in the complaint, need not be perfect in order to survive constitutional scrutiny, it need only be rational. *Turner*, 482 U.S. at 90-91; *Russell*, 384 F.3d at 448. Based on the limited allegations in the complaint in the face of case law substantiating the County Defendants' legitimate interest in protecting the inmates and jail personnel from highly communicable diseases, the complaint fails to state a cause of action upon which relief may be granted.

### 3. The Complaint Fails To Allege The Necessary Facts To Support A Constitutional Violation For The Blood Test And X-Ray

In addition to the legal insufficiency of the complaint, Plaintiff utterly fails to allege how his constitutional rights were violated by the testing he describes. For example, the complaint makes no mention of who administered the tests or where they were performed, let alone how any procedures utilized were somehow constitutionally deficient. *See, e.g., Dunn*, 880 F.2d at 1197 (plaintiff's complaint was devoid of allegations that the manner or place of AIDS testing in prison was unreasonable). The complaint further fails to address how Plaintiff was harmed by having to undergo the intake process in the first place, which appears to be the crux of Plaintiff's claims. Under the Supreme Court's recent decision in *Twombly*, Plaintiff must plead more than mere legal and factual allegations unsupported by facts. Rather, Plaintiff must demonstrate, on the face of his complaint, the plausibility of his claims. *Twombly*, 127 S. Ct. at 1974. As argued below, Plaintiff fails to make such a demonstration as to both his Fourth and Fourteenth Amendment claims.

### CONCLUSION

The instant complaint is devoid of sufficient factual allegations to state a cause of action under § 1983. Moreover, there are two class actions currently pending in the 7th Circuit that involve the same allegations regarding Cook County Jail's intake procedures, and specifically those pertaining to strip searches and penile swabbing. Based on the limited allegations contained in his complaint, Plaintiff is clearly already a member of each of those two classes. Plaintiff, cannot, therefore, represent a class of individuals bringing an action challenging those same procedures. Moreover, since the allegations arise out of the same nexus of facts, the intake procedure for pretrial detainees, all of Plaintiff's claim should be barred under the doctrine of *res judicata.*

Plaintiff also fails to state a claim as a matter of law regarding the chest x-ray and withdrawal of blood for a deprivation of his constitutional rights under the Fourth and Fourteenth Amendments. The Defendant Sheriff has an affirmative, statutory duty to protect inmates in the jail from bodily harm, including communicable diseases that may be introduced by pretrial detainees. The minimal inconvenience of a simple blood test and a chest x-ray is far outweighed by the legitimate interest and duty of the County Defendants in protecting the heath of all inmates.

WHEREFORE, the County Defendants respectfully request that this Honorable Court dismiss all of the claims against them pursuant to Fed.R.Civ.P. 12(b)(6).

                    Respectfully submitted,
                    RICHARD A. DEVINE
                    State's Attorney of Cook County

By:   /s/ Maureen O. Hannon
        One of his Assistants

Patrick T. Driscoll, Jr.
Deputy States Attorney
Chief, Civil Actions Bureau

Louis R. Hegeman
Supervisor, Special Projects & Assignments

John P. Heil Jr.
Maureen O. Hannon
Assistant State's Attorneys
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-4370