IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT HARPER, | ) | |
| | ) | No.   07 C 2393 |
| Plaintiff, | ) | |
| | ) | Judge John W. Darrah |
| v. | ) | |
| | ) | Magistrate Judge Schenkier |
| SHERIFF OF COOK COUNTY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION**

Defendants, the Sheriff of Cook County and Cook County (together referred to as the "Defendants"), by and through their attorneys, RICHARD A. DEVINE, State's Attorney of Cook County, Patrick T. Driscoll, Jr., Deputy State's Attorney, and Louis R. Hegeman, Frank Catania and Maureen O. Hannon, Assistant State's Attorneys, Respond to the Plaintiff's Motion For Class Certification as follows:

**INTRODUCTION**

Plaintiff seeks Rule 23(b)(3) certification for a class action under 42 U.S.C. § 1983, alleging that his subjection to the intake procedures as a pre-trial detainee at Cook County Jail while a family member was "ready willing and able" to post bond" violated his rights secured by the Fourth and Fourteenth Amendments.(Ex.. A, ¶9). Plaintiff seeks monetary relief on behalf of himself and a proposed class of individuals. (Ex.. A, ¶11). The Motion For Class Certification purports to be on behalf of the following:

> All persons who were processed into the Cook County Jail on and after
> May 2, 2005 while persons acting on behalf of the arrestee sought to post
> cash bond.

(Ex.. B p.1). The instant motion for class certification should be denied because Plaintiff cannot meet all of the required elements set forth in Rule 23(a) of the Federal Rules of Civil Procedure: numerosity, commonality, typicality, and adequacy of representation. In addition, the nature of the alleged constitutional tort is such that individual claims and defenses predominate

1

over common questions, and therefore, Plaintiff cannot establish the predominance requirement of Fed.R.Civ.P.23(b). Moreover, because there are two other class actions currently pending in this district involving the same purported class members whom Plaintiff seeks to represent with his litigation, this class action is not a superior form of adjudication of Plaintiff's claims as required in Fed.R.Civ.P.23(b). Failure to meet *any* of the requirements set forth in Fed. R. Civ. P. of Rule 23 (a) or (b) precludes class certification. *Patterson v. General Motors Corporation,* 631 F.2d 476, 480 (7th Cir 1980). Finally, the proposed class cannot be objectively defined and is not administratively feasible. No variation of this proposed definition will suffice because "persons acting on behalf of" the detainees[1] would be a necessary party to each plaintiff's claim. In order to make a meaningful determination of class certification issues, a court needs to look into the claims, defenses and relevant facts. *Thompson v. Spinelli*, 2005 U.S. Dist LEX.IS 22969.

## STATEMENT OF FACTS

### A. *Plaintiff's Harper's Action*

Plaintiff was arrested in the evening of September 29, 2005 in Chicago for possession of cocaine with intent to sell, a felony. (Ex. A ¶4, Ex. C, at.26)). He was transported to Cook County Jail on the morning of Friday, September 30, 2005, for a bond hearing. (Ex. A, ¶ 4, ). Bond court for pretrial arrestees begins each weekday at 1:00 p.m. and is completed by approximately 2:30 p.m. to 2:45 p.m. every day. (Ex. D at 44). Following the probable cause hearing, and because the Plaintiff had prior felony convictions, the presiding judge set bond at $15,000. (Ex. C, at 27, 29). The court remanded the Plaintiff to the custody of the Defendant Cook County Sheriff. (Ex. A ¶5). Plaintiff was released from the custody of the Sheriff at approximately 11:30 p.m. that same evening after his wife posted bond. (Ex. C at 57). The Clerk's record indicates that bond was posted at 4:15 p.m. (Ex..E Clerk's bond sheet). This record substantiates the fact that bond was posted almost two hours after bond court was over. Plaintiff was arrested again in December 2005 for cocaine possession and bond was denied. He spent over a month in Cook County Jail at that time. (Ex. C at12).

Plaintiff's complaint alleges that his constitutional rights were violated when he was required to submit to the intake processing required of all persons admitted to the Cook County Jail while persons acting on Plaintiff's behalf sought to post bond. (Ex. A ¶10). The Plaintiff asserts that

---

[1] The proposed members would not be "arrestees" but "detainees" since they have had their hearing before a judge.

the intake practice violates the Equal Protection Clause of the Fourteenth Amendment because "it has at all times relevant been the practice of the Sheriff of Cook County to excuse from this processing persons of wealth, clout, or political influence who, after bond has been set at "TV court," are "ready, willing, and able to post cash bond." (Ex. A ¶8).  And further, that the jail's intake processing itself was a constitutional tort because it included four allegedly non-consensual steps: (1) a chest x-ray; (2) a penile swab; (3) the taking of blood; and (4) a strip search. (Ex. A, ¶ 7, 9). As a result, Plaintiff alleges to have experienced embarrassment, humiliation, an unreasonable deprivation of his liberty, and pain and suffering due to the policy and practice of the Defendant Sheriff. (Ex. A ¶ 9).

### *B. Detainee Intake Processing and Posting of Bail*

The jail processes approximately 300 male detainees each day through its receiving and intake division.  (Ex. D at 153). If the nature of the bond permits, a detainee may personally post bond for himself at any time. (Ex. D at 202-206). The bond area where someone else could post for a detainee is open from 9:00 a.m. until 9:00 p.m. and if you are there by 9:00 p.m., the bonding office (which is not part of nor controlled by the Sheriff's Office) will accept money until midnight. (Ex.D at 251-252).

The allegation in paragraph 9 of the complaint that the Sheriff intentionally sends some people though processing while they await bail and excuses others with "wealth, clout, or political affiliation" is wholly unsupported by Plaintiff in his own deposition. (Ex. C at 50).  Indeed, from the Sheriff's perspective, they would not want to send anyone down to processing who could bond out instead.  As Brown testified, "[T]he last thing we want is an Ex.tra detainee running around the receiving room.  What we are going to do is get them out of there as soon as possible." (Ex. D at 206). It is also inconsistent with the Sheriff's General Orders which direct that all new inmates are kept together during the intake process.  The only exception to this directive is for inmates who require special handling, such as ones who pose a security or escape risk, are uncooperative, or need protective custody. (Ex. F General Order 13.1  III. (K). Detainees who have their bond posted while going through intake process are, in fact, directed to move ahead of the other inmates to speed up their release. (Ex. F General Order 13.1.III (L)).

It is undisputed that a detainee can post bond himself with cash or a credit card (Ex..D at 202) or someone can post it on his behalf. (Ex. D at 207). The bond posting area for Cook County Jail is in the lobby of Division 5. (Ex. D at 205, 207).  If the detainee wants to post bail with cash or

a credit card, as indicated on signs throughout receiving, he need only tell a Sheriff's officer. (Ex. D at 203) However, no one can be released until they get their unique ID number (CIMIS) for jail detainees. (Ex. D 46, 49, and 204-205) and until the bond amount has been paid. An obvious problem arises when a detainee claims that someone will be bonding him out, but bond is not posted before the detainee begins intake proceedings. For example, this question was asked in a deposition of Dan Brown, the Sheriff's Superintendent over Receiving, Classification, and Trust in the *Young* case:

> Q: Does a detainee who is in the basement and is going through a portion of the processing prior to the strip search but who doesn't have money or the credit card to post bail themselves but who knows that someone is coming to post bail for them, for example, me and I know my mom is coming, has the ability to ask not to be processed while they wait for the person to show up for the bond?
> A. No.
> Q. Has anyone ever tried to do that?
> A. Yes, I have so and so coming to post bond for me. I'm sorry, when they get here and we know that they are there, we will pull you aside but until then you have to finish the process."

(Ex. D at 242-243). Thus, until the bond is actually paid, the processing of detainees into the Sheriff's custody does not stop. "It could be that a detainee is already at the psych interview before someone says this guy has been bonded." (Ex. D at 212). "For example, the person may have shown up in a lobby at 7:00 or 8:00 at night and he [the detainee] may have already been searched… he may have made it to that part before we pulled him out to put him in a little bull pen." (Ex. D at 226-227).

The process of discharging a detainee begins once bond has been paid to the Clerk's office. Then a phone call is made down to the intake desk in the receiving area reporting that the individual is ready to have bond posted. (Ex. D at 209). The inmate is pulled out of Sheriff's intake processing and is placed in the discharge area until the process of checking the records is complete. (Ex. D at 210) This is consistent with Plaintiff Harper's testimony as well. (Ex. C at 48-49). The Sheriff discharges people twenty-four hours a day, seven days a week. (Ex. D at 253). Plaintiff Harper alleges that his discharge and release should have happened faster, but he cannot identify anyone who was similarly situated and was able to avoid processing. (Ex. C at 50, 63-64).

In order to assure that the Sheriff's office is not releasing the wrong individual, the discharge procedure is thorough and includes a brief interview, a photograph, and a fingerprint. (Ex. D at

213). If there is a large influx of individuals that need to be processed into the jail, the 2:00 p.m.-10:00 p.m. processing of new detainees will be longer than usual. (Ex. D at 248). The fact that detainee information must be manually fed into the Sheriff's computer system will also makes the processing longer. (Ex. D at 251). Thus, the amount of time it takes for posting of bail, intake processing, and discharge for each and every individual necessarily varies from day to day depending on the time and manner in which bond is posted for the detainee, as well as the volume of detainees in the Sheriff's office.

### *C. Pre-Existing Class Actions*

Plaintiff was a member of two certified classes in cases now pending in this District Court for the precise allegations he posits now in this case: the penal swab (*Jackson, et al. v. Sheriff of Cook County, et al.*, 06 C 493) and the strip search, (*Young, et al. v. County of Cook, et al.*, 06 CV 552,) Plaintiff has opted out of these two class actions so as to pursue his own litigation. (Ex.. C at 69-70). However the putative class members which Plaintiff seeks to represent are already members of those two existing classes.

The first pending action, *Jackson, et al. v. Sheriff of Cook County, et al.*, 06 C 493, ("Jackson case") is currently before the Honorable David H. Coar. On December 14, 2006, a class of plaintiffs was certified consisting of:

> All male prisoners at the Cook County Jail who, on and after January 27, 2004, were subjected to the non-consensual insertion of a swab into his penis as part of his admission to the jail.

A copy of Judge Coar's Memorandum Opinion and Order is attached. (Ex. G). A Class Settlement Agreement was subsequently approved. (Ex.. H) Because Plaintiff asserts that he suffered a "non-consensual insertion of a swab into [his] penis" (A, ¶ 7) "[o]n or about September 30, 2005" (Ex.. A, ¶ 4), any claim Plaintiff or the potential class members have arising from that procedure would be part of the class certified in *Jackson*. Plaintiff was, in fact, a member of the *Jackson* class, and it is Plaintiff's counsel, Kenneth N. Flaxman and Thomas G. Morrissey, who are litigating the *Jackson* case before Judge Coar. Plaintiff has filed an "Opt Out" from that class. (Ex..I). Plaintiff testified that he does not know how his lawsuit would be different from the class in Jackson. (Ex.. C at 73).

The second certified class action, *Young, et al. v. County of Cook, et al.*, 06 CV 552, ("Young case") is currently pending before the Honorable Matthew F. Kennelly. Two individual

classes were certified under Fed.R.Civ.P. 23 in *Young* on April 25, 2007, consisting of:

> (1) all males who were subjected to a strip search and/or a visual body cavity search as new detainees at the Cook County Jail on or after January 30, 2004; and (2) all persons charged only with misdemeanor or lesser offenses not involving drugs or weapons who were subjected to a strip search and/or a visual body cavity search as new detainees at the Cook County Jail on or after January 30, 2004.

A copy of Judge Kennelly's Memorandum Opinion and Order is attached. (Ex. J). As outlined above, Plaintiff alleges that he was arrested on or about September 30, 2005, and then subjected to numerous jail intake procedures, including a strip search. (Ex. A, ¶ 4, 7). The strip search alleged in the Complaint obviously occurred well after the January 30, 2004, date certified by Judge Kennelly. As Plaintiff was certainly a "new detainee" processed into the jail well after January 30, 2004, he is already a member of the certified class as to all claims regarding his strip search.

Plaintiff bears the burden of proving that a class should be certified. *Trotter v. Klincar*, 748 F.2d 1177, 1184 (7th Cir. 1984). The evidence thus far weighs against certification of a class for several reasons. Plaintiff cannot support a cause of action for a constitutional tort because he did not see anyone treated differently to support an equal protection claim, (Ex. C at 50, 63, 64); Plaintiff and the other individuals he seeks to represent fall within existing classes for the strip search and penial swab (Ex.. C at 73-74). Finally, testified that he has no problem with the blood test and chest x-tray which were the remaining "injuries" comprising his constitutional tort. (Ex. C at 72-73).

### ARGUMENT

### A. THE PUTATIVE CLASS DOES NOT MEET THE REQUIREMENTS FOR A CLASS ACTION AS SET FORTH IN FRCP 23(a).

*1. Numerosity*

Plaintiff must establish that the class is so numerous that joinder of all members is impracticable. Plaintiff cannot rely on "mere speculation or conclusory allegations to demonstrate the size of the purported class. *Roe v. Town of Highland*, 909 F.2d 1097, 1100 (7th Cir.1990). Plaintiff must provide some evidence or reasonable estimate of the number of class members. *Block v. Abbott laboratories*, 2002 U.S. Dist. LEX.IS 5453 *7 (N.D. Ill. March 2002). Moreover, where the purported class is not sufficiently identifiable, class certification will be denied regardless of its

size. *Oshana v. Coca-Cola Company*, 472 F.3d 506, 513 (7th Cir. 2006). "Although the plaintiff need not allege the exact number or identity of the class members, the plaintiff ordinarily `must show some evidence or reasonable estimate of the number of class members." *Block v. Abbott Laboratories*, 2002 U.S. Dist. LEX.IS 5453, *7 (N.D. Ill. March 28, 2002) *citing Long v. Thornton Township High Sch. Dist.*, 82 F.R.D. 186, 189 (N.D. Ill. 1979)).

In his motion for class certification, Plaintiff asserts that the putative class would consist of detainees who have gone through processing (penile swab, strip search, blood test and x-ray) from 2005 to the present while family members sought to post bond. Plaintiff suggests that his "class" would be based on the class members in the *Jackson* case. His class number would be persons who were released on bail the same day that they were processed into the jail from May 2, 2005 to January 25, 2007, which he asserts is approximately five people each day for three years, or more than 5700 persons. (Ex. B ¶5). Persons who were "released" is not sufficiently identifiable since there are many reasons an individual would be "released" the same day including an I-bond, home monitoring, or lack of probable cause. In addition Plaintiff's notion that all of these people necessarily had family or friends "ready willing and able" to immediately post bond, is purely speculative and would require an individual factual analysis for each member to determine (1) who tried to post their bond; (2) whether they had sufficient funds, (3) how quickly they posted bond, and (4) what defenses does the Sheriff's office has for each person in the putative class who was processed on a different day at a different time. One could assume, for example, that a large number of these hypothetical class members posted bond the same day just used a credit card. (See Ex. D at 202).

Plaintiff's speculative theory, based on his attorneys supposition that merely because an individual was released within twenty-four hours, there must have been a family member who immediately posted bond, does not support the numerosity requirement. This type of speculative support was expressly rejected in *Marcial v. Coronet Insurance Company*, 880 F.2d 954 (7th Cir 1989). Plaintiffs contended that the class would consist of 400-600 claimants whose insurance claims were denied but failed to establish that the persons would have legitimate claims. The court held that Plaintiffs' own assumption as to the basis for the denial of the insurance claim was insufficient. *Id*. at 957.

Moreover, assuming *arguendo* that Plaintiff could present a class of individuals who had gone through intake processing while someone was "ready willing and able" to post bond, these

individuals would also necessarily be class members for the "strip search" case of *Young,* involving detainees within the same time period - 2005 to the present. In order to be member of Plaintiff Harper's class, the individuals would need to opt out of *Young* just as the Plaintiff did, so that they would not receive a double recovery. For the same reasons, the putative class would also be within the penial swab class action in *Jackson,* which covers male detainees from 2004 to the present. Thus, any member of Plaintiff Harper's proposed class would have to have opted out of the *Jackson* case as well. Because Plaintiff Harper has offered nothing more than mere speculation of who might be class members and presented no hard evidence or reasonable estimate, the numerosity requirement has not been established.

### 2. *Commonality*

Federal Rule of Civil procedure 23(a)(2) requires that class members share common questions of law or fact. The requirement is usually satisfied when a common nucleus of operative facts unites a class." *Block*, 2002 U.S. Dist. LEX.IS 5453 at *8 *citing Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). The motion to certify the instant class suggests that the "common questions of law or fact" are the allegation in the complaint (Ex. B at ¶6): that people with 'wealth, clout, or political influence" don't go through processing. (Ex. A ¶7-8). But the Plaintiff cannot support such a claim since he testified under oath that he did not see, nor experience any disparate treatment due to "wealth, clout, or political influence." There is nothing in the record to suggest that there is any such policy or "standardized conduct" to treat individual with "wealth, clout, or political affiliation" to satisfy the commonality requirement. In fact the General Orders direct that all inmates are processed together unless they are uncooperative, mentally ill, an escape risk, or in need of protective custody. (Ex..F, III.(K)).

Similarity of claims and situations must be demonstrated, it cannot be assumed. *Szabo v. Bridgeport Machine*, 249 F.3d 672, 677 (7th Cir. 2001) citing *General Telephone Co. v. Falcon*, 457 U.S. 127, 102 S. Ct. 2364 (1982). Inherent in the *Harper* class analysis is that before one gets to the issue of whether there is a constitutional tort, a prevailing class member would need to present evidence that: (1) a family member was in fact immediately able to post bond, (2) did post bond immediately, and (3) that the class member was exposed to the same intake procedures as Harper. It is evident from the deposition testimony of Dan Brown, that an inmate may be pulled from the intake processing at any time once bond has been processed. (Ex.. D at 210-211, 226-227), and that people may appear to post bond at any time between 9 a.m. and 9 p.m. For

8

this reason a commonality of facts and issues cannot be presumed here. Individual questions would necessarily predominate over common questions of law or fact to support a cause of action.

### *3. Typicality*

Federal Rule of Civil Procedure 23(a)(3) requires that the claims or defenses of the plaintiff be typical of the claims or defenses of the class. A plaintiff's claim is typical if it arises from the same practice or conduct that gives rise to the claims of other class members and if each is based on the same legal theory. *De La Fuente v. Stokely – Van Camp, Inc.* 713 F.2d 225, 232 (7th Cir. 1983). The typicality requirement of Rule 23(a)(3) is closely related to the commonality requirement of Rule 23(a)(2). *Block*, 2002 U.S. Dist. LEX.IS 5453 at *8-*9 *citing Ruiz v. Stewart Assoc., Inc.*, 171 F.R.D. 238, 242 (N.D. Ill. 1997)). Where proof of the representative plaintiffs claim would not necessarily prove all of the putative class members claims, he or she fails to satisfy the typicality requirement of Rule 23(a). *Block v. Abbott Laboratories*, 2002 U.S. Dist. LEX.IS 5453 (2002). Moreover, "[i]n a case where individual questions of fact predominate over common questions of fact, a class action is not appropriate." *St. Leger*, 123 F.R.D. at 569 *citing Hewitt v. Joyce Beverages of Wisc.*, 721 F.2d 625, 628-629 (7th Cir. 1983).

Plaintiff's putative class is directed to "all persons." (Ex. B) As an initial matter, Plaintiff's claims cannot be typical of claims of a female detainee, because the intake processes for men and woman differ. (Ex.. D at 152-153, 238-239). There are approximately ten times as many men as women processed into the jail each day and the women have a scanner as part of the search. (*Id*.) Moreover, as set forth within the commonality section of this brief, because each particular detainee will have a particular fact scenario as to the type of bail that was set in each case and has to establish that a friend immediately secured the bail deposit money, the class claims will not be "typical."

Plaintiff's assertion of typicality is purely speculative. In *Oshana v. Coco Cola Company*, 472 F.3d 506 (7th Cir. 2006) the court rejected typicality where the damages and injury to the class members were speculative. Plaintiff in *Oshana* tried to establish a class of persons who like her, were deceived into thinking that fountain Diet Coke and canned Diet Coke had the same ingredients. The claims were not be typical because, "countless members of the putative class could not show damage let alone proximate cause for Coke's alleged deception." *Id*. at 514. Harper's claims regarding bond and the time he waited for discharge will not be typical of all

pretrial detainees.

Significantly, the Sheriff's defense to each member's claim will also necessarily be different for each individual. The evidence shows that on any given day, a myriad of factors affect the speed with which a detainee is released after bond was paid: the number of detainees, the functioning of the computer, the hours of the clerk employee who may or may not stay late, a shortage of the medical personnel. (Ex. D at 75, 79, 248, 251, 252). To the extent there is a Fourth Amendment claim, the "reasonableness" of the Sheriffs' behavior must be examined on a case -by -case basis. *Moore v. Marketplace Restaurant*, 754 F.2d 1336, 1351 (7th Cir. 1985). An equal protection claim, requires a showing of similarly situated individuals. When the claimed injury is tied to different conduct by the defendants on different days - as opposed to a single act to which all class members were exposed – limitations exist in meeting the typicality requirement. *Clay v. American Tobacco Company, Inc.* 188 F.R.D. 483, 492 (S.D.Ill.1999). Such differences exist in the instant case. The putative plaintiffs in Harper's class would have atypical fact scenarios regarding the manner in which their bail was posted, their prior criminal records, outstanding warrants, the number of detainees in the Sheriff's receiving area that day, and other factors that may slow the intake processing. Thus, Plaintiff cannot demonstrate the necessary elements of commonality and typicality.

### 4. *Adequacy of Representation*

Federal Rule of Civil Procedure 23(a)(4) requires that the representative party fairly and adequately protect the interests of the class. Harper has two felony convictions. He has been in jail multiple times, and it was not until he came in contact with an attorney, who is the attorney for one of the sister pending class actions in the federal district court discussed above, that he thought his rights were violated. (Ex. C at 64-65). Relevant to this issue is that fact the Plaintiff cannot state an actionable claim, and therefore is not an adequate representative. A "class representative must have a cause of action in his own right in order to bring a class action." *Vanskike v. Peters*, 974 F.2d 806, 813 (7th Cir. 1992). *Accord Tidwell v. Schweiker*, 677 F.2d 560, 566 (7th Cir. 1982). It is clear from his deposition that Plaintiff cannot support the allegations in his own complaint and substantiate a constitutional violation. While the court does not consider arguments directly on the merits on a motion for class certification, it does take into account the substantive elements of a plaintiff's claims and look to the proof necessary to those

elements so as to envision the form a trial on those issues would take. *Clay v. American Tobacco Company Inc.* 188 F.R.D. 483 at 489 (S.D.Ill.1989).

In order to set forth a Fourteenth Amendment Equal Protection claim, a plaintiff must allege that: (1) he was intentionally treated differently, (2) from other similarly situated individuals, (3) without a rational basis. *Smith v. City of Chicago* 457 F.3d 643, 650-651 (7th Cir. 2006); *Lunini v Grayeb*, 395 F.3d 761, 768 (7th Cir. 2005); *Racine v. Racine Unified School District,* 424 F.3d 677, 680 (7th Cir. 2005). To be considered "similarly situated," comparators must be *prima facie* identical in all relevant respects. *Racine*, 424 F.3d at 681. Plaintiff testified in his deposition that he was treated no differently than anyone else during the intake process. (Ex. C at 50, 63). In the present matter, Plaintiff is challenging an alleged policy of the Cook County Sheriff to excuse from intake processing individuals of wealth, clout, and political influence. (Ex .A). When there are no fundamental rights or suspect classifications at issue, Equal Protection claims are evaluated under the rational basis standard of review. *Smith v. City of Chicago,* 457 F.3d 643, 650. Pretrial detainees are not members of a suspect class. *Myrie v. Commissioner NJ Department of Corrections*, 267 F.3d 251, 263(3rd Cir. 2001). *Abdul-Akbar v. Mckelvie*, 239 F.3d 307, 317 (3rd Cir. 2001) cert denied 533 U.S. 953 (2001).

Thus, even if the fanciful policy alleged by Plaintiff existed, the Sheriff would not be required to articulate a reason for it. Rather, the burden is on the Plaintiff to eliminate any reasonably conceivable state of facts that could provide a rational basis for the complained-of classification. *Smith,* 457 F.3d at 652. It is undisputed that the named Plaintiff did not even witness or experience any alleged discrimination. (Ex..C at 50, 63). Moreover, the deposition of Dan Brown (Ex. D) and the Sheriff's General Orders regarding processing (Ex. F, III (K) and (L)) identify a rational basis for both the processing to be done until bail is posted and support the fact that sometimes discharge processing may be faster than other times.

Even assuming, for purposes of this motion for class certification, that the Plaintiff could sustain a cause of action under an equal protection analysis, it is apparent that Plaintiff cannot contemplate how his class action would be different from the class in *Jackson* 06 C 493 for the penal swab (Ex. C at 73) and *Young* 06 C 0552 for the strip search (Ex. C. at 74). The Plaintiff has no problem with the blood test. (Ex. C at 72), and if he had to get a test for tuberculosis, he would rather have the chest x-ray like he did in Cook County Jail than the TB skin test with the needle that he had at the prison in Detroit. (Ex. C at 73). There can be no tort without a

cognizable injury. *Niehus v. Liberio*, 973 F.2d 526, 532 (7th Cir. 1992). Thus, there is no Fourth Amendment unreasonable search and seizure claim that could be advanced by this Plaintiff. Accordingly, he is not an adequate class representative.

### B.  THE PUTATIVE CLASS DOES NOT MEET THE REQUIREMENTS FOR A CLASS ACTION AS SET FORTH IN FRCP 23(b).

Plaintiff brings his class action under Federal Rule of Civil Procedure 23(b)(3) which requires that questions of law or fact common to the members of the class must predominate over any questions affecting only individual members, and that proceeding as a class action is superior to other forms of adjudication. (*Id*).

#### *1. Predominance Requirement*

This requirement is fatal as applied to Plaintiff Harper's purported class because individual questions of each member predominate over common questions. This predominance criterion is more demanding than the commonality requirement addressed in Rule 23(a)(2). *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 623-624, 117 S.Ct. 2231, 2250 (1997). Because liability determinations require individual and fact intensive inquiries it is improper to certify this class under Rule 23(b)(3). *Thompson v. Spinelli*, 2005 Dist. LEX.IS 22969 (N.D.Ill) "If liability questions are not subject to class-wide proof and would instead require individual and fact-intensive determinations, it cannot be said that common issues predominate.".See also *Williams v. Ford Motor Company*, 192 F.R.D. 580, 584 (N.D. Ill. 2000)(Certification is improper where liability determinations are individual and fact intensive).

In *Spinelli*, this court denied class certification after concluding that the Court would need to review over four thousand credit card agreements to determine whether the fee as issue for each class member was authorized. *Thompson v. Spinelli*, 2005 Dist. LEX.IS 22969*2 (N.D.Ill). Similarly the Seventh Circuit rejected a class action where individual questions predominated in *Marcial v. Coronet Insurance*, 880 F.2d 954 (7th Cir. 1989). The potential class members were those alleged to have been forced to take a polygraph test prior to receiving insurance claim processing. Because the main issue was whether the plaintiffs were "compelled" to take the polygraph, the court determined that it would need to know the facts surrounding what was said to each claimant and therefore the individual questions predominated over those common to the class. *Id* at 957. In a case similar to the proofs in the instant case, in *Travis v. A Chicago Police Officer* 1987 U.S. Dist Lexis 2052 (N.D. Ill. 1987) this District rejected a motion for class certification of "all persons held by the

City for misdemeanor offenses who were held in custody for clearance of fingerprints and there was a delay of over one hour." The District Court held that, even if all the requirements of Rule 23(a) were satisfied, plaintiff's motion must be denied because questions common to the class do not predominate over the questions affecting only the individual members. "The major issues in the case, whether the rights of the members of the purported class under the fourth amendment were violated, depends on whether their detentions were 'unreasonable.' *Id* at 2 The determination of whether an individual has been detained too long to comport with the requirements of the fourth amendment must be made on a case- by – case basis." *Id*.

Like the decisions in *Spinelli, Marcial,* and *Travis,* individual issues predominate in Plaintiff Harper's case and class certification should be rejected. The evidence before the Court reveals that, after a finding of probable cause and a court order remanding the pretrial detainee to the custody of the Sheriff of Cook County, each detainee and his family have a variety of options regarding the procedure to post bond and secure the detainee's release from custody. (Ex. D at 202-209). The manner and speed of discharge is necessarily affected by the variables such as the detainees' history, the amount of bond, compliance, and cooperation while proceeding through receiving in conjunction with the volume and activity in the Sheriff's Receiving Division that evening. As a result, when an individual is remanded to the custody of the Sheriff, their time and experience in the intake procure is likely to be different each time. This fact is evidenced by Harper's own testimony. For example, in September, 2005, he could post bail, and in December 2005 he court not. (Ex. C at 27 and 12-13). His friend and co- defendant had a much lower bond amount.(Ex.C at 29). In September 2005, the penile swab test was painful and in December 2005 it was not. (Ex. C at 52). Finally, to the extent a detainee is one who required special handling as set forth in the General Order 13.1, the Sheriff would have a defense that would be raised if the processing of that individual was different. Plaintiff's attempts to establish a class of persons whose Fourth and Fourteenth Amendment rights were violated when they went through the intake procedure would require an individualized analysis for each person who posted bond following his placement with the Sheriff. This individualized proof necessary to establish that a prisoner's Fourth or Fourteenth Amendment rights were violated is not conducive to a class action.

### 2. *Superiority Requirement*

Nor is this class action a superior method of adjudication of Plaintiff's claims. Federal law directs that in evaluating this requirement, the court may consider "the extent and nature of

any litigation concerning the controversy already commenced by or against members of the class," the interest of members of the class in individually controlling the prosecution or defense of separate actions; the desirability of concentrating the litigation in this forum; and the difficulties that ate likely to be encountered in managing this class action. Fed.R.Civ.P 23(b)(3)(A)(B)(C)and-(D). There are already two class actions covering the same time frame and same class members for the penile swab (*Jackson*) and the strip search (*Young*). Adding a third class will conflict and overlap with those classes of pretrial detainees. In addition, it is more costly and difficult for the Sheriff and County to defend the same issues in different class actions. To the extent Plaintiff's claims fall outside of the *Jackson* and *Young* class actions, there is also a consent decree covering the living conditions at the jail in the case of *Duran v. Elrod* 74 C 2949 that pertains to all pretrial detainees in the custody of the Department of Corrections. The intake procedures challenged here such as "an unsanitary animal cage" are well within the purview of that consent decree currently under the direction of Honorable Judge Virgina Kendall.

Finally, to the extent Plaintiff is asserting that his action is different from *Jackson* and *Young* because he wants to add a Fourteenth Amendment Equal Protection claim that the Sheriff has a policy of treating individuals with wealth or clout differently (Ex. at ¶ 8), that difference does not support his case for a class action. First, all of the same problems with respect to numerosity, typicality and predominance of individual questions over common questions still Ex.ist. Secondly, Plaintiff cannot by his own admission support an equal protection case. (Ex.C at 50). Because the Sheriff cannot know when, in fact, a detainee or his family will post bail, he cannot set that detainee aside in hopes that it will happen. He has to weigh objective facts with his statutory obligations to process and protect the detainees remanded to his custody. There is a discretionary element to this process. Clearly, the Sheriff cannot be guilty of a constitutional tort for following their statutory obligations and duties, or for exercising the necessary discretion of his office.

Nor would the existence of this class serve the interests of justice or judicial economy. Rather, it would promote forum shopping in which the same purported class action could be filed in several different courtrooms at the same time. A member of a judicially certified class should not be permitted to bring exactly the same suit again and again. As a member of the *Jackson* and *Young* classes, Plaintiff already has the opportunity to recover for the supposed constitutional

deprivation he alleges. To the extent Plaintiff wants to raise additional class allegations as part of those suits, he is certainly free to do so.

## **CONCLUSION**

The instant motion for class certification should be denied because Plaintiff cannot establish the numerosity, commonality, typicality, and adequacy of representation elements set forth in Rule 23(a) of the Federal Rules of Civil Procedure. The class is not capable of objective definition, and due to the individual proof necessary to establish liability as to each potential class member, would not be administratively feasible. Furthermore, the nature of the alleged constitutional tort is such that individual claims and defenses predominate over common questions and Plaintiff cannot meet the requirement set forth in Rule 23(b) of the Federal Rules of Civil Procedure. Finally, because there are two other class actions currently pending in this District involving the same purported class members whom Plaintiff seeks to represent with his litigation, this class action is not a superior from of adjudication of Plaintiff's claims. (*Id*).

WHEREFORE, for the foregoing reasons, Defendants Sheriff of Cook County and the County of Cook respectfully request that this Honorable Court deny Plaintiff Harper's Motion to Certify a Class.

                                    Respectfully submitted,

                                    RICHARD A. DEVINE
                                    State's Attorney of Cook County
                    By:    /s/ Maureen O. Hannon A.S.A

Patrick T. Driscoll, Jr.
Chief, Civil Actions Bureau
Louis R. Hegeman
Supervisor, Special Projects & Assignments
Frank Cantania A.S.A
Maureen O. Hannon A.S.A
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-4370

## **CERTIFICATE OF SERVICE**

I, MAUREEN O. HANNON, Assistant State's Attorney, certify that I electronically filed the enclosed Response To Plaintiff's Motion For Class Certification with the Clerk of the Court and caused to be served upon the individuals listed below via the CM/ECF system on April 11, 2008.

Kenneth N. Flaxman, Esq.
200 South Michigan Avenue, Suite 1240
Chicago, Illinois 60604

Thomas G. Morrissey, Esq.
10249 South Western Avenue
Chicago, Illinois 60643
*Attorneys for Plaintiff*

/s/ Maureen O. Hannon